SEALED

AO 106 (Rev. 04/10) Application for a Search Warrant

FILED

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

DEC 1 1 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| T307 Alhambra Ave, Vallejo, CA;  607 State St, Earlimart CA; 2004 Chevrolet Tahoe (CA lic: 7BIS650); 2008 Toyota Tacoma (CA lic: 07677N2) | ) |

Case No.

1: 19 SW   0 0 3 8 6 EPG

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____ Eastern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 21 USC 841(a)(1) | Possession of a Controlled Substance with the Intent to Distribute |
| 21 USC 846 | Conspiracy |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

☑ Affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 and 41(d)(3).

*Applicant's signature*

LANDON HOFFMAN, SA HSI
*Printed name and title*

☐ Sworn to before me and signed in my presence.

Date: 1~ 11/19

*Judge's signature*

City and state:  Fresno, California

Hon. Erica P. Grosjean, U.S. Magistrate Judge
*Printed name and title*

1    MCGREGOR W. SCOTT
     United States Attorney
2    STEPHANIE M. STOKMAN
     Assistant United States Attorney
3    2500 Tulare Street, Suite 4401
4    Fresno, CA 93721
     Telephone: (559) 497-4000
5    Facsimile: (559) 497-4099

6    Attorneys for Plaintiff
7    United States of America

8

9
                    IN THE UNITED STATES DISTRICT COURT FOR THE
10
                         EASTERN DISTRICT OF CALIFORNIA
11

12

13

14   In the Matter of the Search of:

15   307 ALHAMBRA AVENUE,
     VALLEJO, CALIFORNIA;                    NO.
16   607 STATE STREET, EARLIMART,
     CALIFORNIA; A 2004 BURGUNDY             AFFIDAVIT IN SUPPORT OF AN
17   CHEVROLET TAHOE SPORT                   APPLICATION FOR A SEARCH AND
     UTILITY VEHICLE BEARING                 SEIZURE WARRANT
18   CALIFORNIA LICENSE PLATE
19   7BIS650; A 2008 WHITE TOYOTA
     TACOMA PICKUP TRUCK BEARING             **UNDER SEAL**
20   CALIFORNIA LICENSE PLATE
21   07677N2.

22       I, Special Agent Landon C. Hoffman, being duly sworn, depose and state as follows:
23                                    **INTRODUCTION**
24       1.  I submit this affidavit in support of an application for a search and seizure warrant for the
25   following locations and property:
26           A. **307 Alhambra Avenue, Vallejo, California, 94591 ("TARGET RESIDENCE")**, the
                current residence of JOSE and FROYLAN Sanchez[1];
27

28       [1] Because FROYLAN and JOSE share the same last name, I refer to them by their first names,

    B. **607 S State Street, Earlimart, California, 93291 ("TARGET LOCATION")**, the residence of relatives of JOSE and FROYLAN SANCHEZ;

    C. A **2004 burgundy Chevrolet Tahoe sport utility vehicle** bearing California license plate 7BIS650 and registered to Belinda Sanchez at 3000 Stoney Peak Lane, Bakersfield, California, 93313 ("**TARGET VEHICLE 1**" or "**TV1**");

    D. A **2008 Toyota Tacoma pickup truck** bearing California license plate 07677N2 and registered to FROYLAN SANCHEZ at 133 Castro Avenue, Pixley, California, 93256 ("**TARGET VEHICLE 2**" or "**TV2**");

2.　　Based on the ongoing federal investigation detailed below, I believe that FROYLAN and JOSE have jointly engaged in the sale of narcotics to an undercover agent ("UCA") in Napa County, in the Northern District of California, on three separate occasions ("controlled purchases") between August 2019 and November 2019. At each of their three meetings with the UCA in Napa, FROYLAN and JOSE arrived in **TARGET VEHICLE 1**. I further believe that FROYLAN and JOSE reside at **TARGET RESIDENCE** in Vallejo (Solano County), and have obtained narcotics from a source of supply associated with the **TARGET LOCATION** in Earlimart (Tulare County). Immigration database records indicate that FROYLAN and JOSE have the same father as a man named Luis Sanchez ("Luis"), and that Luis is married to a woman named Amairani Sanchez ("Amairani"). Credit bureau listings and utility records indicate that Amairani resides at **TARGET LOCATION**.

3.　　Additionally, I believe that **TARGET VEHICLE 2**, which is registered to FROYLAN, has been utilized in this drug trafficking operation. For example, on November 7, 2019, agents observed FROYLAN drive **TV1** to Los Banos, California (Merced County). There, on the side of the road, FROYLAN met an unidentified man ("UM") who arrived in **TV2**. An agent observed UM exit **TV2**, hand FROYLAN a box-shaped package, then return to **TV2**, which UM proceeded to drive to **TARGET LOCATION**. Once **TV2** arrived at **TARGET LOCATION**, an agent observed a passenger exit **TV2**, briefly enter **TARGET LOCATION**, then return outside. The passenger handed an unidentified item to the driver of **TV2**. The passenger returned inside the **TARGET LOCATION** and **TV2** drove away. Meanwhile, other agents observed FROYLAN return to Napa County, where, that same night, FROYLAN and JOSE proceeded to sell approximately two pounds of methamphetamine to

unless otherwise noted.

1  an undercover officer.

2      4.    Based on my training and experience and the facts set forth in this affidavit, there is

3  probable cause to believe that FROYLAN and JOSE have violated and will continue to violate the

4  following federal laws: 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute / Distribution of a

5  Controlled Substance) and 21 U.S.C. § 846 (Conspiracy to Possess with Intent to Distribute /

6  Distribution of a Controlled Substance) (the "target offenses").  This affidavit therefore requests

7  authority to search the locations and property described in Attachment A-1 through Attachment A-4 in

8  order to locate and seize the items described in Attachment B as evidence and instrumentalities of

9  violations of 21 U.S.C. §§ 841(a)(1) and 846.  Attachments A-1 through A-4 and Attachment B are

10  fully incorporated by reference.

11      5.    The facts in this affidavit come from my personal observations, my training and

12  experience, information from records and databases, and information obtained from other agents and

13  witnesses.  This affidavit does not set forth all of my knowledge about this matter; it is intended only to

14  show that there is sufficient probable cause for the requested warrant.  As this investigation progresses,

15  my understanding of the significance of certain events and evidence may change or evolve.

16      6.    Where statements made by other individuals are referenced in this affidavit, such

17  statements are described in summary unless otherwise noted.  Similarly, where information contained in

18  reports, recordings, and/or other documents or records is referenced in this affidavit, such information is

19  also described in summary unless otherwise noted.

20                                **AGENT'S BACKGROUND**

21      7.    I am a Special Agent with the United States Department of Homeland Security ("DHS"),

22  Immigration and Customs Enforcement/Homeland Security Investigations ("HSI"), presently assigned

23  to the Office of the Special Agent in Charge, San Francisco, California.  I am an "investigative or law

24  enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer

25  of the United States who is empowered by law to conduct investigations of, and to make arrests for,

26  offenses enumerated in 18 U.S.C. § 2516.  I graduated from the Criminal Investigator Training Program

27  and the HSI-Special Agent Training Program at the Federal Law Enforcement Training Center in

28  January 2018. Prior to working with HSI, I spent approximately nine years as a Police Officer with the

AFFIDAVIT

3

1  Union City Police Department in Georgia.  During my tenure with the Union City Police Department, I

2  served as a Patrol Officer, Special Investigator, Sergeant, and Lieutenant.  In the course of my law

3  enforcement career, I have received over 2500 hours in training, including training in the areas of

4  advanced investigative techniques, evidence collection, crime-scene processing, criminal law and

5  procedure, warrant preparation, interviewing, surveillance techniques, crime analysis, and operational

6  planning.  I hold a Bachelor of Science in Criminal Justice and a Master's in Public Administration.

7      8.      As an HSI Special Agent, I have led and participated in the investigation of offenses

8  including human trafficking, narcotics trafficking, and money laundering.  As a Georgia Peace Officer, I

9  supervised, led, and participated in the investigation of organized crime, narcotics distribution, sex

10  trafficking, and other violent crimes against persons.  During these investigations, I utilized various

11  investigative techniques, including electronic surveillance pursuant to court-authorized wiretaps,

12  undercover agents, criminal informants, controlled purchases of contraband, physical surveillance,

13  consensual recording, investigative interviews, mail covers, garbage searches, GPS tracking devices,

14  pole-mounted cameras, and the service of Grand Jury subpoenas.  I have prepared and executed

15  numerous state and federal arrest warrants and search warrants.  In my law enforcement career, I have

16  participated in no fewer than 100 investigations relating to either the use and/or trafficking of narcotics.

17      9.      Based on my training, background, experience, conversations with other law enforcement

18  officers (collectively my "training and experience"), I am aware that individuals who distribute

19  controlled substances often conceal controlled substances at their residences. Additionally, drug dealers

20  commonly are in possession of items to facilitate their drug dealing business. These items include digital

21  scales, used and unused packaging material, substances used to dilute the controlled substances to yield

22  more sellable product, notes and other records regarding their drug transactions, cellular phones to

23  communicate with drug buyers and suppliers, and firearms to protect themselves or their contraband.

24      10.      From my training and experience, I know that many drug dealers use cellular telephones

25  to facilitate their drug dealing business.  Specifically, I know that drug dealers use cell phones to arrange

26  meeting locations and times, negotiate prices and quantities, and discuss the quality of the substance.

27  The current investigation has revealed that FROYLAN Sanchez and JOSE Sanchez have used their

28

1   cellular phones to facilitate drug transactions with an undercover agent.

2       11.    From my training and experience, I also know that drug traffickers often utilize vehicles

3   in which to transport and distribute controlled substances and/or contraband.  I know that persons

4   involved in distributing controlled substances will often conceal, store, and transport controlled

5   substances and/or contraband in vehicles under their control.  Often times, therefore, such individuals

6   will have several vehicles located on their premises.  Some of these vehicles are often in various states

7   of repair, ranging from total abandonment and non-drivable to brand new.  Often, law enforcement find

8   that such vehicles are registered in the name of other individuals, which can be indicative of a dealer's

9   attempt to insulate himself from law enforcement detection and apprehension.  I believe that searching

10  vehicles present at the residences or places of business of such individuals and found to be under their

11  control (as evidenced by possession of keys or paperwork indicating they have access to the vehicle)

12  during the service of the search warrant may produce relevant evidence.  Likewise, as FROYLAN and

13  JOSE utilize their vehicles in order to conduct narcotics transactions, items such as customer lists, pay-

14  owe sheets, sales information, shipping labels, receipts, packaging materials such as plastic baggies,

15  scales, cell phones, and/or cash may be found  in the vehicles.

16      12.    Based on my training and experience, I know that it is common for drug traffickers to

17  store drugs and/or drug paraphernalia inside of their residences.  I know that many drug traffickers also

18  keep other evidence of drug trafficking at their residences, including firearms, cell phones, packaging

19  materials, scales, and currency at their residences.  Additionally, I know that it is common for drug

20  dealers to possess firearms to protect their drug supply and profits.  Drug dealers often earn substantial

21  cash proceeds that they accumulate or convert to other assets, such as jewelry, vehicles, real estate, bank

22  accounts, or other investments.  Many drug dealers maintain informal records accounting for their drug-

23  related finances and/or the accumulation/transformation of drug proceeds.

## APPLICABLE STATUTES

25      13.    Under Title 21, United States Code, Section 841(a)(1), it is unlawful for any person to

26  "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to

27  manufacture, distribute, or dispense a controlled substance."

28      14.    Under Title 21, United States Code, Section 846, "any person who attempts or conspires

AFFIDAVIT

5

1   to commit any offense" defined in Title 21, Chapter 13, Subchapter I "shall be subject to the same

2   penalties as those prescribed for the offense, the commission of which was the object of the attempt or

3   conspiracy."    Sections 841(a)(1) and 846 each fall within Title 21, Chapter 13, Subchapter I.

4                                  **PROBABLE CAUSE**

5        15.    In the summer of 2019, agents from the Napa Special Investigations Bureau ("NSIB")

6   and the Department of Homeland Security, Homeland Security Investigations ("HSI") developed

7   information that brothers FROYLAN Sanchez, AKA Daniel Sanchez Bustos, and JOSE Sanchez were

8   involved in trafficking narcotics from the Eastern District of California into Napa County.  As discussed

9   below, information obtained to date indicates that FROYLAN and JOSE reside in Vallejo and have a

10  narcotics source of supply ("SOS") in Earlimart.

11       16.    In the last four months, JOSE and FROYLAN have been involved in the sale of pound quantities of

12  methamphetamine to an undercover agent in Napa County, in the Northern District of California, on

13  three separate occasions.[2]  During one of the three transactions, the undercover agent also purchased a

14  half-ounce of cocaine directly from FROYLAN.  As of this writing, the identity of the SOS in Earlimart

15  is unknown.

16       **August 22, 2019: CS-1 Contacted JOSE to Purchase Methamphetamine and Cocaine[3]**

17       17.    On the afternoon of August 22, 2019, at the direction of law enforcement, a Confidential

18  Source handled by HSI agents ("CS-1") called JOSE by calling (707) 333-7680 ("phone 1").[4]  CS-1

19  reported that, during this conversation, CS-1 offered to purchase methamphetamine and cocaine from

20

21       [2] Unless otherwise noted, the weights of any narcotics mentioned in this affidavit are the
22  approximate gross weights (with packaging).

         [3] This telephone call, which was in Spanish, was not recorded.  The summary of this call is based
23  on CS-1's reporting of the call to agents.

24       [4] CS-1 is currently handled by HSI agents.  CS-1's criminal history includes a felony conviction
    involving the sale of narcotics in the early 1990s.  CS-1 also has prior arrests not resulting in
25  convictions, including a felony narcotics offense in the early 2000s, and felony narcotics and firearms
    charges within the last ten years.  CS-1 is not a U.S. citizen and has several prior arrests for immigration
26  offenses, as well as prior deportations.  CS-1 is currently cooperating with HSI agents in exchange for
    immigration benefits.  To the best of my knowledge and belief, CS-1 has provided reliable information
27  during this investigation.  For example, information provided by CS-1 has been corroborated via agents'
28  surveillance efforts.

AFFIDAVIT                                        6

1  JOSE. JOSE agreed to provide CS-1 with methamphetamine and cocaine, but advised that he would not

2  have the substances until later that night.

3       18.    That afternoon, NSIB agents conducted surveillance of **TARGET RESIDENCE**, where

4  I believe FROYLAN and JOSE reside.[5] Around 5:00 p.m., agents observed JOSE exit **TARGET**

5  **RESIDENCE** and enter **TARGET VEHICLE 1**, parked in the driveway of **TARGET RESIDENCE**.

6  JOSE entered the driver's seat of **TV1**, which he drove away from **TARGET RESIDENCE**. NSIB

7  agents continued their visual surveillance of JOSE as he drove **TV1** away from Vallejo. Through visual

8  surveillance, agents ultimately tracked **TV1** to Earlimart.

9       19.    That evening, around 9:30 p.m., an NSIB agent located **TV1** parked outside of **TARGET**

10  **LOCATION**. Shortly thereafter, the agent terminated surveillance of **TV1** and **TARGET**

11  **LOCATION**.

12       20.    Ultimately, the planned August 22, 2019 transaction between CS-1 and JOSE did not

13  occur. Thereafter, agents decided that NSIB Sergeant Alfonso Ortiz, who is fluent in Spanish, would

14  attempt to contact JOSE at phone 1 and, in an undercover capacity, attempt to purchase

15  methamphetamine and cocaine from JOSE.

16      **August 23, 2019: UCA Buys Methamphetamine and Cocaine from FROYLAN and JOSE**

17       21.    On the afternoon of August 23, 2019, Sergeant Ortiz ("Undercover Agent" or "UCA")

18  called JOSE at phone 1. JOSE did not answer. Minutes later, JOSE called UCA from phone 1.[6] UCA

19  advised JOSE that UCA's friend had given him JOSE's phone number. UCA advised JOSE that he

20  needed "a little errand around there." JOSE replied "yes, yes, yes." JOSE stated "I'm not the one, it's

21  my brother, but I'll put him on for you." JOSE handed phone 1 to his brother, who UCA later identified

22  as FROYLAN Sanchez.

23       22.    During this conversation, FROYLAN explained that UCA's "buddy" had asked to

---

24      [5] Prior to August 22, 2019, agents learned of a May 2019 traffic collision report (Napa Sheriff's

25  Department case 19-002503) in which JOSE Sanchez reported his address as 307 Alhambra Avenue in Vallejo.

26      [6] Each of UCA's phone calls to JOSE and FROYLAN were recorded and in Spanish. I have

27  reviewed transcripts of these calls, which were interpreted from Spanish to English by Spanish speaking linguists. Additionally, I have spoken with UCA about his interactions with FROYLAN and with JOSE

28  throughout this investigation.

1  purchase "Cristinas" and "blanca."  From speaking with UCA about this conversation, I know that UCA

2  understood "Cristinas" to be a reference to methamphetamine and "blanca" to be a reference to cocaine.

3  From my training and experience, I also know that "blanca" is Spanish for "white" and is frequently

4  used in reference to cocaine.

5       23.    Later that afternoon, FROYLAN called UCA from +52-664-483-5807 ("phone 2"), a

6  number which, based on the +52 prefix, I believe to be associated with a Mexico-based service provider.

7  FROYLAN indicated that phone 2 "is good" and that he would not use "the other number."  Over the

8  course of his communications with FROYLAN that afternoon, UCA arranged to purchase one "Cristina"

9  and "half" of the "Blanca" in exchange for $2,600.  UCA advised me that he understood this to mean

10  that he would purchase from FROYLAN approximately one pound of methamphetamine and one half-

11  ounce of cocaine for $2,600.  UCA and FROYLAN arranged to meet near an El Pollo Loco restaurant in

12  Napa later that day.

13       24.    That afternoon, around 5:00 p.m., an agent observed TV1 enter and park in the parking

14  lot of El Pollo Loco, located at 287 Soscol Avenue in Napa, in the Northern District of California.  An

15  agent saw two Hispanic males inside TV1.  In the driver's seat, the agent saw a Hispanic male who

16  UCA later identified as JOSE.  In the front passenger seat, the agent saw a Hispanic male who UCA

17  later identified as FROYLAN.

18       25.    Minutes later, UCA, driving an unmarked vehicle, arrived in the same parking lot.  UCA

19  parked and exited his car, then approached the front passenger side of TV1.  There, UCA spoke with

20  FROYLAN, who remained in the front passenger seat.  UCA handed FROYLAN approximately $2,600

21  in cash.  FROYLAN handed UCA a plastic grocery bag containing three separate packages.  UCA then

22  returned to his vehicle and both parties drove away.

23       26.    Minutes later, around 5:21 p.m., FROYLAN called UCA from phone 2.  FROYLAN

24  explained that the bag he handed UCA contained "two orders" for another person, which FROYLAN

25  had given UCA by mistake.  At FROYLAN's request, UCA returned to the El Pollo Loco and gave

26  FROYLAN of the three packages contained in the plastic grocery bag he received from FROYLAN

27  earlier that evening.

28       27.    UCA then met with NSIB agents.  The two remaining packages (Item 1-2 and Item 1-3)

1    were transported to the Napa Special Investigations Bureau and booked into evidence.  During

2    subsequent presumptive testing, Item 1-2 tested presumptively positive for methamphetamine and was

3    found to weigh approximately 455.5 grams (gross).  Item 1-3 tested presumptively positive for cocaine

4    and was found to weigh approximately 14.3 grams (gross).  Items 1-2 and 1-3 were later submitted to

5    the Drug Enforcement Administration ("DEA") Western Regional Laboratory for analysis.  As of this

6    writing, the results are pending.

7            **September 13, 2019: UCA Buys Methamphetamine from FROYLAN and JOSE**

8            28.      Between September 10 and September 12, 2019, UCA spoke with FROYLAN at phone

9    2.  During these conversations, UCA negotiated a $5,000 purchase of narcotics in which FROYLAN

10   would provide "two whole ones . . . of the strong kind" as well as "refresco."  UCA advised me that

11   "two whole ones . . . of the strong kind" referred to two pounds of methamphetamine.  Additionally, I

12   know that in Spanish, "refresco" can refer to soda.  UCA advised me that, in his conversations with

13   FROYLAN, he understood "refresco" to mean cocaine.

14           29.      During a September 12, 2019 call, FROYLAN advised UCA that FROYLAN "was not

15   able to get you the other one, the one . . . the one you said you wanted one [sic].  I just got you two

16   whole ones," suggesting that FROYLAN obtained two pounds of methamphetamine and no cocaine.

17   During a separate September 12 call, FROYLAN advised UCA that he had a "guy" who was "already

18   on his way," indicating that FROYLAN was waiting for another person to provide him with narcotics to

19   sell UCA.

20           30.      On September 13, 2019, at approximately 12:20 p.m., UCA called FROYLAN at phone

21   2.  During this conversation, UCA and FROYLAN further discussed the planned narcotics transaction.

22   FROYLAN advised that he was ready to meet that afternoon.  FROYLAN and UCA agreed to meet near

23   the "same location," meaning they would again meet near the El Pollo Loco in Napa.

24           31.      That afternoon, around 3:50 p.m., UCA arrived at the El Pollo Loco parking lot in Napa.

25   Around 3:58 p.m., an agent observed **TV1** arrive and park in the El Pollo Loco parking lot.  UCA exited

26   his vehicle and approached JOSE, who sat in the front passenger seat of **TV1**.  FROYLAN was seated in

27   the driver seat of **TV1**.  UCA spoke primarily to FROYLAN.  During this meeting, UCA handed JOSE

28   approximately $4,000.  In turn, JOSE handed the UCA a black yard waste bag containing two separate

1   packages. UCA returned to his vehicle and both parties drove away.

2        32.    UCA then met with NSIB agents. The two packages contained in the black yard waste

3   bag (Item 4-2 and Item 4-3) were transported to the Napa Special Investigations Bureau and booked into

4   evidence. During subsequent presumptive testing, Item 4-2 tested presumptively positive for

5   methamphetamine and was found to weigh approximately 443.2 grams (gross). Item 4-3 tested

6   presumptively positive for methamphetamine and was found to weigh approximately 458.1 grams

7   (gross). Items 4-2 and 4-3 were later submitted to the DEA Western Regional Laboratory for analysis.

8   As of this writing, the results are pending.

9        33.    I later reviewed GPS tracking data obtained from an electronic tracking device

10  ("tracker") previously installed on **TV1**, pursuant to a state search warrant issued in Napa County

11  Superior Court on August 28, 2019. In reviewing the tracker data for TV1 following the September 13,

12  2019 sale, I noted that **TV1** left El Pollo Loco at approximately 4:00 p.m. and drove to **TARGET**

13  **RESIDENCE** in Vallejo, arriving at approximately 4:50 p.m. The tracker data indicates that **TV1** made

14  only short stops on the travel path, and the timing of this trip appears consistent with traveling this route

15  in rush hour traffic. This information contributed to my belief that FROYLAN and JOSE reside at

16  **TARGET RESIDENCE**.

17       34.    Further review of the tracker data indicated that, September 14, 2019, **TV1** began

18  traveling south on Interstate 680 at approximately 11:40 a.m. At Approximately 3:34 p.m., **TV1** arrived

19  at **TARGET LOCATION**—the same address TV1 drove to from Vallejo on August 22, 2019, prior to

20  the August 23, 2019 controlled sale of methamphetamine and cocaine.

21       35.    Additionally, in reviewing transcripts of the recorded conversations between UCA and

22  FROYLAN, I noticed that FROYLAN indicated that the narcotics he sold UCA on September 13, 2019

23  had been delivered to FROYLAN the previous day by an unknown individual. This information

24  contributed to my belief that JOSE drove TV1 to TARGET LOCATION the night before the August 23,

25  2019 controlled purchase to obtain narcotics. Additionally, this information contributed to my belief

26  that FROYLAN and/or JOSE drove TV1 to **TARGET LOCATION** on September 14, 2019 to pay their

27  narcotics source of supply for the narcotics delivered to FROYLAN prior to the September 13, 2019

28  controlled purchase.

AFFIDAVIT

10

**November 7, 2019: UCA Buys Methamphetamine from FROYLAN and JOSE**

36.     On November 7, 2019, at approximately 11:51 a.m., UCA, having previously attempted to contact FROYLAN on phone 1, called JOSE on phone 2. UCA asked JOSE if FROYLAN was available to talk. Around 11:57 a.m., FROYLAN called UCA from phone 1. UCA and FROYLAN negotiated a purchase of two "libretas" and approximately $1,000 worth of "sodita." Based on my training and experience and my subsequent conversations with UCA, I understand that "libretas" referred to methamphetamine and "sodita" referred to cocaine. FROYLAN advised he could go obtain the narcotics and return later that night. FROYLAN added that he might have someone bring the narcotics to him by, stating "I would need to tell the guy to go pick them up and bring them over to me. It's about a two- to three-hour ride from there to here, for him to bring them to me." Ultimately, UCA and FROYLAN agreed to meet later that night, depending on when FROYLAN would be ready.

37.     At approximately 4:00 p.m., an agent conducting surveillance of **TARGET RESIDENCE** observed FROYLAN enter the driver's seat of **TV1**, which was parked outside. Agents saw FROYLAN drive **TV1** away from **TARGET RESIDENCE**, across multiple roadways, and ultimately onto southbound Interstate 5. Around 8:15 p.m., an agent observed **TV1** pull into a gravel parking lot near a Shell gas station on Mercy Springs Road in Los Banos, California. **TV1** then pulled behind a white Toyota pickup truck that, according to California Department of Motor Vehicle records, was registered to FROYLAN. The agent watched FROYLAN exit the driver's seat of **TV1** and meet UM, the driver of **TV2**, outside the vehicles. There, UM handed FROYLAN a box-shaped package slightly smaller than a common shoebox. Both men then returned to their respective vehicles. At approximately 8:17 p.m., **TV1** and **TV2** exited the gravel parking lot towards Interstate 5. **TV1** entered Interstate 5 north, while and **TV2** entered Interstate 5 south.

38.     Around 8:18 p.m., with the assistance of California Highway Patrol Air Operations, agents followed **TV2** south on Interstate 5. Ultimately, **TV2** arrived outside **TARGET LOCATION** shortly after 10:15 p.m. An officer saw a passenger exit **TV2**, approach **TARGET LOCATION**, and knock on the property's rear door. The passenger then entered **TARGET LOCATION**, only return approximately one minute later. The passenger returned to **TV2** and handed an unknown item to the driver of **TV2**. **TV2** then drove away, while the passenger returned inside the **TARGET LOCATION**.

39.     Agents continued monitoring **TV2**. Around 10:35 p.m., an agent observed **TV2** arrive at the Mirage Vista Apartments, located at 875 E Terra Bella Avenue in Pixley (Tulare County), California. The agent watched the driver of **TV2** exit the truck and walk into the breezeway of one of the apartment buildings. Agents then terminated surveillance of **TV2**.

40.     Meanwhile, additional agents followed **FROYLAN** as he drove **TV1** northbound on Interstate 5. At approximately 6:06 p.m., **FROYLAN** called UCA from phone 2. **FROYLAN** advised, "Oh. I'm here, heading up now. I'm going to go see you; I'm heading over there now. I think soon… It's just that there is so much traffic, but I'm… I'm bring your order with me [sic]." Around 9:32 p.m., **FROYLAN** again called UCA, explaining that **FROYLAN** was approximately 40 minutes away. Eventually, UCA and **FROYLAN** agreed to meet near a Walmart in American Canyon (Napa County), California.

41.     At approximately 10:35 P.M., UCA parked at a Chevron gas station on Napa Junction Road in American Canyon, near the Walmart. Around 10:40 p.m., I observed **TV1** drive through the Walmart parking lot, toward the Chevron station, where it ultimately parked near a gas pump. Another agent observed UCA approached the driver's side of **TV1** on foot, where he spoke to **FROYLAN**, while JOSE sat in the front passenger seat of **TV1**. UCA handed **FROYLAN** approximately $4,000.00. **FROYLAN** handed UCA a small cardboard box. UCA then returned to his vehicle, at which point **TV1** and UCA left separately.

42.     UCA then met with NSIB agents. Agents noted that the cardboard box (item 7-2) held two clear ziplock baggies (items 7-2A and 7-2B) containing suspected methamphetamine. Items 7-2, 7-2A and 7-2B were transported to the Napa Special Investigations Bureau and booked into evidence. During subsequent presumptive testing, Item 7-2A tested presumptively positive for methamphetamine and was found to weigh approximately 450.7 grams (gross). Item 7-2B tested presumptively positive for methamphetamine and was found to weigh approximately 449.6 grams (gross). Items 72-A and 72-B were later submitted to the DEA Western Regional Laboratory for analysis. As of this writing, the results are pending.

43.     In reviewing GPS tracker data for the tracker associated with **TV1**, I noticed that, on November 7, 2019, **TV1** left the Chevron station around 10:45 p.m., and drove to the **TARGET**

1   RESIDENCE, where it arrived at approximately 11:11 p.m.  The tracker data indicates that **TV1** made

2   only short stops on the travel path, consistent with traveling the route.

3         44.     Additionally, I found that the tracker data for November 9, 2019 indicated that **TV1**

4   began traveling south on Interstate 680 around 11:48 a.m., and arrived at the **TARGET LOCATION** at

5   approximately 4:32 p.m.  This information contributed to my belief that FROYLAN and/or JOSE drove

6   **TV1** to **TARGET LOCATION** on November 9, 2019 to pay their narcotics source of supply for the

7   narcotics sold during the November 7, 2019 controlled purchase.

8

9         **Records Checks and Additional Information**

10         45.     As part of my investigation of this case, I conducted a public records check in the law

11   enforcement database CLEAR.  According to a February 2019 credit bureau listing, **TARGET**

12   **RESIDENCE** is associated with JOSE and FROYLAN's father, Froylan Espino Sanchez.

13         46.     In reviewing license plate reader data, I found that **TV1** has parked outside of **TARGET**

14   **RESIDENCE** on at least four separate occasions since August 2019.  According to DMV records, **TV1**

15   is registered to Belinda Sanchez at 3000 Stoney Peak Lane in Bakersfield, California.  According to

16   credit bureau and utility reports obtained on CLEAR, Belinda Sanchez has shared multiple addresses

17   with FROYLAN and JOSE.

18         47.     In reviewing license plate reader data, I found that **TV2** has parked outside of **TARGET**

19   **RESIDENCE** on April 28, 2019 and on May 5, 2019.  License plate reader data also indicated that **TV2**

20   parked outside **TARGET LOCATION** on August 10, 2019.  According to DMV records, **TV2** is

21   registered to FROYLAN SANCHEZ at 133 Castro Avenue, City, Pixley, California.  However, when I

22   conducted mapping research, I was unable to locate this address.

23         48.     California DMV records indicate that JOSE changed his mailing address to **TARGET**

24   **RESIDENCE** on March 21, 2019.

25         49.     In reviewing public records for the **TARGET LOCATION**, I found multiple credit

26   bureau listings and utility service records associated with Luis Sanchez and Amairani Sanchez.  In

27   reviewing Department of Homeland Security, Immigration and Customs Enforcement database records,

28   I located documents indicating that Luis Sanchez, FROYLAN, and JOSE share the same father.

1    Additionally, I found documents indicating that Luis and Amairani Sanchez were married in April of

2    2018.

3          50.      During prior surveillance of the **TARGET LOCATION**, agents observed a 2007 GMC

4    Yukon bearing California license plate 7LCB627 and registered to Amairani Sanchez. This vehicle was

5    parked in the carport outside the **TARGET LOCATION** on September 12, 2019 and September 17,

6    2019. Additionally, while investigating this case, I learned that, on August 16, 2019, Amariani Sanchez

7    filed a police report with the Tulare County Sheriff's Department in which she reported that her GMC

8    Yukon had been vandalized. In the report, Amairani listed her address as that of the **TARGET**

9    **LOCATION**. These facts contributed to my belief that Luis and Amairani Sanchez reside at the

10   **TARGET LOCATION**.

11                    <u>**REQUEST FOR SEALING**</u>

12          51.      This affidavit contains information regarding potential targets and informants which, if

13   unsealed, may jeopardize the very information sought to be gained by these search warrants. In light of

14   the ongoing nature of this investigation, and the likelihood that notice to the above-identified individuals

15   may cause them to destroy evidence, flee from prosecution, and notify confederates, I respectfully

16   request that this affidavit and the resulting search warrants, as well as any related documents, be sealed

17   until further order of the Court, except that working copies should be made available to the United States

18   Attorney's Office, HSI, any other law enforcement agency designated by the United States Attorney's

19   Office, and to counsel for any individual later charged in this case so that the government may comply

20   with its discovery obligations.

21   \\

22

23   \\

24

25   \\

26

27   \\

28

## CONCLUSION

52.      The facts set forth in this affidavit demonstrate probable cause to believe that the locations and property described in <u>Attachment A-1</u> through <u>Attachment A-4</u> to this affidavit contain items listed in <u>Attachment B</u> which constitute evidence, contraband, and/or fruits of a crime, and other items illegally possessed, property designed for use, intended for use, or used in committing a crime, specifically, FROYLAN and JOSE Sanchez and their associates and their ongoing violations of 21 U.S.C. §§ 841(a)(1) and 846.

I swear under penalty of perjury that the facts presented herein are true and accurate to the best of my knowledge.

Respectfully submitted,

LANDON C. HOFFMAN
Special Agent
Department of Homeland Security, Homeland
Security Investigations

Subscribed and sworn to me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3)

on ___Dec. 11___, 2019

THE HONORABLE ERICA P. GROSJEAN

UNITED STATES MAGISTRATE JUDGE

Reviewed as to form by:

STEPHANIE M. STOKMAN
Assistant U.S. Attorney

**ATTACHMENT A-1**

**Area to Be Searched:**

**307 Alhambra Avenue, Vallejo, California, 94591**

307 Alhambra Avenue, Vallejo, California, 94591 (**"TARGET RESIDENCE"**) is a single family, single story residence located on the north-east corner of the intersection of Alhambra Avenue and Laurel Street in Vallejo. The residence is a greenish-grey colored stucco with white colored trim and a gray colored shingled roof. The front door is brown in color and faces south. There is a rock or brick front porch leading to the front door. The property is closed in by a chain-link fence approximately three feet tall. The numbers 3, 0, and 7 are affixed to the front of the house to the left of the front door.

The requested search shall include all rooms of the **TARGET RESIDENCE**, including any safes, locked containers, storage containers, closets, sheds, and garages associated with the premises. Also to be searched are vehicles directly associated with the residence, *i.e.* vehicles parked in the driveway or alley behind the residence or vehicles parked near the residence that are believed to be associated with the residence based on documents or property recovered inside the residence.



**ATTACHMENT A-2**

**Area to Be Searched:**

**607 S State Street, Earlimart, California, 93291**

607 S State Street, Earlimart, California, 93291 (**"TARGET LOCATION"**) is a single family, single story residence located on the north-west corner of the intersection of S State Street with E Wilson Avenue in Earlimart, CA. The residence is an off-white colored stucco with a reddish colored shingled roof. The front door is brown in color and faces east. There is a rear building on the property that is light orange colored stucco with a reddish colored shingled roof. The front door to the outbuilding is white and faces east. The property is partially enclosed by a chain-link fence approximately three feet tall and partially by a wood slat fence. There is an open carport on the south side of the property. The numbers 6, 0, and 7 are affixed to the front of the house to the right of the front door.

The requested search shall include all rooms of the **TARGET LOCATION**, including any safes, locked containers, storage containers, closets, sheds, and garages associated with the premises. Also to be searched are vehicles directly associated with the residence, *i.e.* vehicles parked in the driveway or alley behind the residence or vehicles parked near the residence that are believed to be associated with the residence based on documents or property recovered inside the residence.



## ATTACHMENT A-3

### Area to Be Searched:

**A burgundy 2004 Chevrolet Tahoe sport utility vehicle** bearing California license plate 7BIS650 ("**TARGET VEHICLE 1" or "TV1"**) and registered to Belinda SANCHEZ of 3000 Stoney Peak Lane, Bakersfield, California, 93313.



## ATTACHMENT A-4

### Area to Be Searched:

**A white 2008 Toyota Tacoma pickup truck** bearing California license plate 07677N2
(**"TARGET VEHICLE 2" or "TV2"**) and registered to Froylan Sanchez at 133 Castro Avenue,
Pixley, California, 93256.



**ATTACHMENT B**

**ITEMS TO BE SEIZED FROM TARGET RESIDENCE, TARGET LOCATION,**
**TARGET VEHICLE 1, TARGET VEHICLE 2,**
**FROYLAN SANCHEZ, AND JOSE SANCHEZ**

Any item tending to establish and document a conspiracy to distribute and possess with intent to distribute controlled substances and the distribution and possession with intent to distribute methamphetamine and cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, from on or about August 22, 2019, to November 7, 2019, including:

  a.  Controlled substances (including prescription drugs);

  b.  United States currency (in excess of $1,000.00), foreign currency, precious metals, jewelry, stocks, bonds, money orders, certificates of deposit and cashier's checks;

  c.  Items evidencing the expenditure of drug-related proceeds, namely: receipts, purchase agreements, vehicle titles, warranty applications, homeowners or renters insurance applications and claims, jewelry;

  d.  Account statements, account summaries, credit card statements, banking deposit slips, handwritten-notes containing account information, account holder and amount deposited, money market accounts, overseas banking information to include routing codes, deposit receipts, canceled checks, loan agreements and loan applications;

  e.  Safe deposit box keys and agreements and commercial storage locker keys or records;

  f.  Drug distribution paraphernalia, namely; scales, baggies, vacuum sealers and vacuum sealer bags, drug ledgers, pay-owe sheets, customer lists, price lists and code sheets;

g.  Devices used to communicate with other individuals involved in distributing controlled substances, including cellular telephones, satellite telephones, mobile telephones; and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts of literature describing the same;

h.  Safes, lock boxes, lockers, or any other secured container which contains any of the included items referenced in this attachment establishing evidence of a conspiracy or the use, distribution, transportation, ordering, sale, or receipt of controlled substances;

i.  Items involved in packaging and transporting controlled substances, including scales, heat sealing devices, plastic bags, measuring devices, razor blades, and related paraphernalia;

j.  Firearms, firearms accessories, and other weapons to include bats and knives, used to protect drug supplies and trafficking proceeds.

k.  Items tending to establish the identity of the person in control of the **TARGET RESIDENCE**, and any items seized from the **TARGET RESIDENCE**, to include utility company receipts, mortgage or rent receipts, canceled mail, envelopes, keys, telephone bills, charge card receipts/statements, lease-rental or sale agreements or contracts, gas receipts, notebooks, photographs, videos, savings account passbooks, passports, diaries, notebooks, vehicle registrations and titles, land titles, escrow papers, legal documents, medical records, weapons with serial numbers, and personal clothing, including shoes, pants and shirts.

AO 93  (Rev. 11/13) Search and Seizure Warrant

**ISSUED**

**SEALED**

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   T: 19 SW   0 0 3 8 6 EPG
307 Alhambra Ave, Vallejo, CA )
)
)

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

   See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

   See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____ 14 days _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____ Duty Magistrate Judge _____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
   ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   Dec. 11, 2019 at 1:30pm   E P

Judge's signature

City and state:     Fresno, CA                                  Hon. Erica P. Grosjean, US Magistrate Judge
                                                                *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

 

_____
*Executing officer's signature*

 

_____
*Printed name and title*

## ATTACHMENT A-1

### Area to Be Searched:

**307 Alhambra Avenue, Vallejo, California, 94591**

307 Alhambra Avenue, Vallejo, California, 94591 ("**TARGET RESIDENCE**") is a single family, single story residence located on the north-east corner of the intersection of Alhambra Avenue and Laurel Street in Vallejo. The residence is a greenish-grey colored stucco with white colored trim and a gray colored shingled roof. The front door is brown in color and faces south. There is a rock or brick front porch leading to the front door. The property is closed in by a chain-link fence approximately three feet tall. The numbers 3, 0, and 7 are affixed to the front of the house to the left of the front door.

The requested search shall include all rooms of the **TARGET RESIDENCE**, including any safes, locked containers, storage containers, closets, sheds, and garages associated with the premises. Also to be searched are vehicles directly associated with the residence, *i.e.* vehicles parked in the driveway or alley behind the residence or vehicles parked near the residence that are believed to be associated with the residence based on documents or property recovered inside the residence.



**ATTACHMENT B**

**ITEMS TO BE SEIZED FROM TARGET RESIDENCE, TARGET LOCATION,**

**TARGET VEHICLE 1, TARGET VEHICLE 2,**

**FROYLAN SANCHEZ, AND JOSE SANCHEZ**

Any item tending to establish and document a conspiracy to distribute and possess with intent to distribute controlled substances and the distribution and possession with intent to distribute methamphetamine and cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, from on or about August 22, 2019, to November 7, 2019, including:

a.  Controlled substances (including prescription drugs);

b.  United States currency (in excess of $1,000.00), foreign currency, precious metals, jewelry, stocks, bonds, money orders, certificates of deposit and cashier's checks;

c.  Items evidencing the expenditure of drug-related proceeds, namely: receipts, purchase agreements, vehicle titles, warranty applications, homeowners or renters insurance applications and claims, jewelry;

d.  Account statements, account summaries, credit card statements, banking deposit slips, handwritten-notes containing account information, account holder and amount deposited, money market accounts, overseas banking information to include routing codes, deposit receipts, canceled checks, loan agreements and loan applications;

e.  Safe deposit box keys and agreements and commercial storage locker keys or records;

f.  Drug distribution paraphernalia, namely; scales, baggies, vacuum sealers and vacuum sealer bags, drug ledgers, pay-owe sheets, customer lists, price lists and code sheets;

g.  Devices used to communicate with other individuals involved in distributing controlled substances, including cellular telephones, satellite telephones, mobile telephones; and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts of literature describing the same;

h.  Safes, lock boxes, lockers, or any other secured container which contains any of the included items referenced in this attachment establishing evidence of a conspiracy or the use, distribution, transportation, ordering, sale, or receipt of controlled substances;

i.  Items involved in packaging and transporting controlled substances, including scales, heat sealing devices, plastic bags, measuring devices, razor blades, and related paraphernalia;

j.  Firearms, firearms accessories, and other weapons to include bats and knives, used to protect drug supplies and trafficking proceeds.

k.  Items tending to establish the identity of the person in control of the **TARGET RESIDENCE**, and any items seized from the **TARGET RESIDENCE**, to include utility company receipts, mortgage or rent receipts, canceled mail, envelopes, keys, telephone bills, charge card receipts/statements, lease-rental or sale agreements or contracts, gas receipts, notebooks, photographs, videos, savings account passbooks, passports, diaries, notebooks, vehicle registrations and titles, land titles, escrow papers, legal documents, medical records, weapons with serial numbers, and personal clothing, including shoes, pants and shirts.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>607 State St, Earlimart CA | )<br>)<br>)<br>)<br>)<br>) |

Case No.  1:19 SW  0 0 3 8 6 EPG

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

   See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

   See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before ____14 days____  *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Duty Magistrate Judge_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____

Date and time issued:  Dec. 11, 2019  at 1:36pm           C. P. _____
                                                              *Judge's signature*

City and state:     Fresno, CA _____      Hon. Erica P. Grosjean, US Magistrate Judge
                                                      *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____          _____
                                              *Executing officer's signature*

                                                 _____

                                              *Printed name and title*

## ATTACHMENT A-2

### Area to Be Searched:

**607 S State Street, Earlimart, California, 93291**

607 S State Street, Earlimart, California, 93291 ("**TARGET LOCATION**") is a single family, single story residence located on the north-west corner of the intersection of S State Street with E Wilson Avenue in Earlimart, CA. The residence is an off-white colored stucco with a reddish colored shingled roof. The front door is brown in color and faces east. There is a rear building on the property that is light orange colored stucco with a reddish colored shingled roof. The front door to the outbuilding is white and faces east. The property is partially enclosed by a chain-link fence approximately three feet tall and partially by a wood slat fence. There is an open carport on the south side of the property. The numbers 6, 0, and 7 are affixed to the front of the house to the right of the front door.

The requested search shall include all rooms of the **TARGET LOCATION**, including any safes, locked containers, storage containers, closets, sheds, and garages associated with the premises. Also to be searched are vehicles directly associated with the residence, *i.e.* vehicles parked in the driveway or alley behind the residence or vehicles parked near the residence that are believed to be associated with the residence based on documents or property recovered inside the residence.



## ATTACHMENT B

## ITEMS TO BE SEIZED FROM TARGET RESIDENCE, TARGET LOCATION, TARGET VEHICLE 1, TARGET VEHICLE 2, FROYLAN SANCHEZ, AND JOSE SANCHEZ

Any item tending to establish and document a conspiracy to distribute and possess with intent to distribute controlled substances and the distribution and possession with intent to distribute methamphetamine and cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, from on or about August 22, 2019, to November 7, 2019, including:

a. Controlled substances (including prescription drugs);

b. United States currency (in excess of $1,000.00), foreign currency, precious metals, jewelry, stocks, bonds, money orders, certificates of deposit and cashier's checks;

c. Items evidencing the expenditure of drug-related proceeds, namely: receipts, purchase agreements, vehicle titles, warranty applications, homeowners or renters insurance applications and claims, jewelry;

d. Account statements, account summaries, credit card statements, banking deposit slips, handwritten notes containing account information, account holder and amount deposited, money market accounts, overseas banking information to include routing codes, deposit receipts, canceled checks, loan agreements and loan applications;

e. Safe deposit box keys and agreements and commercial storage locker keys or records;

f. Drug distribution paraphernalia, namely; scales, baggies, vacuum sealers and vacuum sealer bags, drug ledgers, pay-owe sheets, customer lists, price lists and code sheets;

g.  Devices used to communicate with other individuals involved in distributing controlled substances, including cellular telephones, satellite telephones, mobile telephones; and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts of literature describing the same;

h.  Safes, lock boxes, lockers, or any other secured container which contains any of the included items referenced in this attachment establishing evidence of a conspiracy or the use, distribution, transportation, ordering, sale, or receipt of controlled substances;

i.  Items involved in packaging and transporting controlled substances, including scales, heat sealing devices, plastic bags, measuring devices, razor blades, and related paraphernalia;

j.  Firearms, firearms accessories, and other weapons to include bats and knives, used to protect drug supplies and trafficking proceeds.

k.  Items tending to establish the identity of the person in control of the **TARGET RESIDENCE**, and any items seized from the **TARGET RESIDENCE**, to include utility company receipts, mortgage or rent receipts, canceled  mail, envelopes, keys, telephone bills, charge card receipts/statements, lease-rental or sale agreements or contracts, gas receipts, notebooks, photographs, videos, savings account passbooks, passports, diaries, notebooks, vehicle registrations and titles, land titles, escrow papers, legal documents, medical records, weapons with serial numbers, and personal clothing, including shoes, pants and shirts.

AO 93  (Rev. 11/13) Search and Seizure Warrant

**ISSUED**

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.   7: 19 SW   0 0 3 8 6 EPG |
| 2004 Chevrolet Tahoe (CA lic: 7BIS650) | ) |
| | ) |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

        See Attachment A

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

        See Attachment B

        **YOU ARE COMMANDED** to execute this warrant on or before   **14 days**   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____Duty Magistrate Judge_____ .
*(United States Magistrate Judge)*

        ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
        ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   **Dec. 11, 2019   at 1:30 pm**

City and state:   **Fresno, CA**

*Judge's signature*

Hon. Erica P. Grosjean, US Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A-3

### Area to Be Searched:

**A burgundy 2004 Chevrolet Tahoe sport utility vehicle** bearing California license plate 7BIS650 ("**TARGET VEHICLE 1" or "TV1"**) and registered to Belinda SANCHEZ of 3000 Stoney Peak Lane, Bakersfield, California, 93313.



## ATTACHMENT B

## ITEMS TO BE SEIZED FROM TARGET RESIDENCE, TARGET LOCATION, TARGET VEHICLE 1, TARGET VEHICLE 2, FROYLAN SANCHEZ, AND JOSE SANCHEZ

Any item tending to establish and document a conspiracy to distribute and possess with intent to distribute controlled substances and the distribution and possession with intent to distribute methamphetamine and cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, from on or about August 22, 2019, to November 7, 2019, including:

a. Controlled substances (including prescription drugs);

b. United States currency (in excess of $1,000.00), foreign currency, precious metals, jewelry, stocks, bonds, money orders, certificates of deposit and cashier's checks;

c. Items evidencing the expenditure of drug-related proceeds, namely: receipts, purchase agreements, vehicle titles, warranty applications, homeowners or renters insurance applications and claims, jewelry;

d. Account statements, account summaries, credit card statements, banking deposit slips, handwritten-notes containing account information, account holder and amount deposited, money market accounts, overseas banking information to include routing codes, deposit receipts, canceled checks, loan agreements and loan applications;

e. Safe deposit box keys and agreements and commercial storage locker keys or records;

f. Drug distribution paraphernalia, namely; scales, baggies, vacuum sealers and vacuum sealer bags, drug ledgers, pay-owe sheets, customer lists, price lists and code sheets;

g. Devices used to communicate with other individuals involved in distributing controlled substances, including cellular telephones, satellite telephones, mobile telephones; and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts of literature describing the same;

h. Safes, lock boxes, lockers, or any other secured container which contains any of the included items referenced in this attachment establishing evidence of a conspiracy or the use, distribution, transportation, ordering, sale, or receipt of controlled substances;

i. Items involved in packaging and transporting controlled substances, including scales, heat sealing devices, plastic bags, measuring devices, razor blades, and related paraphernalia;

j. Firearms, firearms accessories, and other weapons to include bats and knives, used to protect drug supplies and trafficking proceeds.

k. Items tending to establish the identity of the person in control of the **TARGET RESIDENCE**, and any items seized from the **TARGET RESIDENCE**, to include utility company receipts, mortgage or rent receipts, canceled mail, envelopes, keys, telephone bills, charge card receipts/statements, lease-rental or sale agreements or contracts, gas receipts, notebooks, photographs, videos, savings account passbooks, passports, diaries, notebooks, vehicle registrations and titles, land titles, escrow papers, legal documents, medical records, weapons with serial numbers, and personal clothing, including shoes, pants and shirts.

AO 93  (Rev. 11/13) Search and Seizure Warrant



# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | T: 1 9 SW   0 0 3 8 6 EPG |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. |
| 2008 Toyota Tacoma (CA lic: 07677N2) | ) | |
| | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     California
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before     14 days     *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Duty Magistrate Judge
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:     Dec. 11 2019 at 1:37pm          _____
                                                                              *Judge's signature*

City and state:     Fresno, CA          Hon. Erica P. Grosjean, US Magistrate Judge
                                                              *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____                    _____
                                                                                    *Executing officer's signature*

                                                                            _____
                                                                                      *Printed name and title*

## ATTACHMENT A-4

## Area to Be Searched:

**A white 2008 Toyota Tacoma pickup truck** bearing California license plate 07677N2 (**"TARGET VEHICLE 2" or "TV2"**) and registered to Froylan Sanchez at 133 Castro Avenue, Pixley, California, 93256.



**ATTACHMENT B**

**ITEMS TO BE SEIZED FROM TARGET RESIDENCE, TARGET LOCATION,**

**TARGET VEHICLE 1, TARGET VEHICLE 2,**

**FROYLAN SANCHEZ, AND JOSE SANCHEZ**

Any item tending to establish and document a conspiracy to distribute and possess with intent to distribute controlled substances and the distribution and possession with intent to distribute methamphetamine and cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, from on or about August 22, 2019, to November 7, 2019, including:

a. Controlled substances (including prescription drugs);

b. United States currency (in excess of $1,000.00), foreign currency, precious metals, jewelry, stocks, bonds, money orders, certificates of deposit and cashier's checks;

c. Items evidencing the expenditure of drug-related proceeds, namely: receipts, purchase agreements, vehicle titles, warranty applications, homeowners or renters insurance applications and claims, jewelry;

d. Account statements, account summaries, credit card statements, banking deposit slips, handwritten-notes containing account information, account holder and amount deposited, money market accounts, overseas banking information to include routing codes, deposit receipts, canceled checks, loan agreements and loan applications;

e. Safe deposit box keys and agreements and commercial storage locker keys or records;

f. Drug distribution paraphernalia, namely; scales, baggies, vacuum sealers and vacuum sealer bags, drug ledgers, pay-owe sheets, customer lists, price lists and code sheets;

g.  Devices used to communicate with other individuals involved in distributing controlled substances, including cellular telephones, satellite telephones, mobile telephones; and devices used to conduct counter-surveillance against law enforcement, such as radio scanners, police radios, surveillance cameras and monitors, anti-bugging devices and devices used to detect the presence of wiretaps, recording devices or transmitters, and/or receipts of literature describing the same;

h.  Safes, lock boxes, lockers, or any other secured container which contains any of the included items referenced in this attachment establishing evidence of a conspiracy or the use, distribution, transportation, ordering, sale, or receipt of controlled substances;

i.  Items involved in packaging and transporting controlled substances, including scales, heat sealing devices, plastic bags, measuring devices, razor blades, and related paraphernalia;

j.  Firearms, firearms accessories, and other weapons to include bats and knives, used to protect drug supplies and trafficking proceeds.

k.  Items tending to establish the identity of the person in control of the **TARGET RESIDENCE**, and any items seized from the **TARGET RESIDENCE**, to include utility company receipts, mortgage or rent receipts, canceled mail, envelopes, keys, telephone bills, charge card receipts/statements, lease-rental or sale agreements or contracts, gas receipts, notebooks, photographs, videos, savings account passbooks, passports, diaries, notebooks, vehicle registrations and titles, land titles, escrow papers, legal documents, medical records, weapons with serial numbers, and personal clothing, including shoes, pants and shirts.